UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
CHARLES PULLEN,                                 :
                                                :     CASE NO. 4:08-CR-00431
    *Petitioner*,                               :
                                                :
vs.                                             :     OPINION & ORDER
                                                :     [Resolving Doc. Nos. 71, 73, 78 & 80]
UNITED STATES OF AMERICA,                       :
                                                :
    *Respondent*.                               :
                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this action brought under 28 U.S.C. § 2255, Petitioner Charles Pullen moves, *pro se*, to vacate his conviction for being a felon in possession of a firearm.[1] Pullen says that he received the ineffective assistance of counsel when his attorney 1) failed to challenge the Court's jurisdiction, 2) failed to suppress certain evidence, and 3) failed to raise certain arguments on appeal. Pullen also moves for leave to amend his petition, for the appointment of counsel, and for the production of grand jury transcripts. The United States opposes Pullen's petition,[2] but has not filed a response to Pullen's other motions. For the following reasons, the Court DENIES Pullen's motions.

I. Background

On September 20, 2008, Youngstown Police Officers patrolled a Youngstown Municipal Housing Authority complex and spotted Petitioner sitting outside an apartment.[3] One of the officers

---

[1] Doc. 71.
[2] Doc. 77.
[3] Doc. 69, at 2-3.

-1-

Case No. 4:08-CR-00431
Gwin, J.

had twice previously arrested Pullen, and had warned Pullen that he was a trespasser on the complex's premises.[4] As such, Pullen was not entitled to be on the property even if invited by a resident.[5] The officers asked Pullen to stand up, and as Pullen stood, he "slid a silver object underneath the cushion of the chair in which he was sitting."[6] The officers discovered a firearm underneath the chair's cushion and arrested Pullen. As the United States Court of Appeals for the Sixth Circuit noted, "[i]n short, one of the police officers recognized Pullen, and Pullen's presence at a place where he was not permitted to be gave the police officer a reasonable, articulable suspicion that Pullen was committing criminal trespass."[7]

In October 2008, a federal grand jury indicted Pullen, who had previously been convicted of assault, possession of cocaine, and of being a felon in possession of a firearm, on charges of once again being a felon in possession of a firearm. After indictment, Pullen moved to suppress the firearm found at the housing complex, saying that "police had no reasonable suspicion that [he] was engaged in criminal activity."[8] After conducting a hearing, Judge Kathleen O'Malley denied the motion to suppress. Pullen went to trial, and on February 18, 2009, a jury convicted Pullen of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).[9] In April 2009, this Court sentenced Pullen to eighty-five months imprisonment, along with three years of supervised release.[10]

---

[4] *Id.* at 3. The trespassing circumstances are in dispute.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] Doc. 16.
[9] Doc. 47.
[10] Doc. 53.

Case No. 4:08-CR-00431
Gwin, J.

Assisted by counsel, Pullen appealed his conviction to the Sixth Circuit, saying that the district court erred by denying his motion to suppress, and that his sentence was substantively unreasonable.[11] The Sixth Circuit affirmed the conviction and sentence. Among other things, it said that "the officer's request that Pullen stand up was supported by reasonable suspicion to believe that criminal activity may be afoot, and the district court did not err in denying Pullen's motion to suppress the gun."[12]

Pullen thereafter filed the instant petition, *pro se*, seeking to vacate his conviction. He had previously sought the appointment of counsel; this Court denied the request, saying that his "claims are straightforward and arise under settled law."[13] Against this backdrop, the Court considers Pullen's petition and assorted motions.

## II. Legal Standard

*A. Section 2255 Petition*

Title 28 United States Code Section 2255 gives a federal prisoner post-conviction means of collaterally attacking a conviction or sentence that he alleges is in violation of federal law. Section 2255 provides four grounds upon which a federal prisoner may challenge his conviction or sentence:

> 1) That the sentence was imposed in violation of the Constitution or laws of the United States;
> 2) That the court was without jurisdiction to impose such sentence;
> 3) That the sentence exceeded the maximum authorized by law; or
> 4) That the sentence is otherwise subject to collateral attack.[14]

To prevail on a § 2255 motion alleging a constitutional error, the movant "must establish an

---

[11] Doc. 69, at 3.
[12] *Id.*
[13] Doc. 76, at 2.
[14] *Hill v. United States*, 368 U.S. 424, 426-27 (1963) (citing 28 U.S.C. § 2255).

Case No. 4:08-CR-00431
Gwin, J.

error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings."[15] And to prevail on a § 2255 motion alleging non-constitutional error, the movant must establish a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process."[16]

B. *Ineffective Assistance Of Counsel*

To succeed on a claim that counsel's assistance was constitutionally ineffective, a movant must pass a two-pronged test. First, he must show that his attorney's performance was so deficient that the attorney "was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."[17] Judicial scrutiny of counsel's performance is highly deferential, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ."[18]

Second, the movant must show that the deficient performance prejudiced the defense so seriously that it deprived him of a fair trial.[19] The movant meets the second prong of the test by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[20]

### III. Analysis

A. *Pullen's motion to appoint counsel*

---

[15] *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).
[16] *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (citing *Hill*, 368 U.S. at 428).
[17] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[18] *Id.* at 689.
[19] *Id.* at 687.
[20] *Id.* at 694.

Case No. 4:08-CR-00431
Gwin, J.

Pullen previously filed a motion for appointment of counsel.[21] This Court denied that motion.[22] Less than a month later, Pullen filed the exact same motion, though without explanation as to how his circumstances had changed.[23] Given no reason to revisit the Court's earlier ruling, the renewed motion for appointment of counsel is denied.

B. *Pullen's motion for leave to amend his petition*

One week after filing his petition under § 2255, Pullen moved for leave to amend it.[24] Pullen does not say *why* he seeks to amend his petition, but instead says only he should be able to do so. Regardless, Pullen filed a supplement to his § 2255 petition that includes further argument and evidence supporting his overall claims for relief. As both the original petition and the supplement appear to be timely filed,[25] the Court will consider both in its analysis. Therefore, the motion for leave to amend is denied as moot.

C. *Pullen's motion for grand jury transcripts*

Pullen asks this Court to provide him with transcripts of the grand jury testimony of one of the Youngstown officers who arrested Pullen.[26] He says that the officer's testimony "dealt with facts in dispute" that speak "to the heart of" his petition. Pullen relies on 18 U.S.C. § 3500(b), which says

---

[21] Doc. 74.
[22] Doc. 76.
[23] Doc. 78.
[24] Doc. 73.
[25] *See Johnson v. United States*, 457 F. App'x 462, 464 (6th Cir. 2012) ("The Antiterrorism and Effective Death Penalty Act (AEDPA) establishes that state and federal prisoners have a one-year limitations period in which to file a habeas corpus petition. That period runs from one of four specified dates, the first of which is the date on which the judgment of conviction becomes final. Generally, a conviction becomes final upon conclusion of direct review. When a federal criminal defendant appeals to the court of appeals, the judgment of conviction becomes final for § 2255 purposes upon the expiration of the ninety-day period in which the defendant could have petitioned for certiorari to the Supreme Court, even when no certiorari petition is filed.").
[26] Doc. 80.

Case No. 4:08-CR-00431
Gwin, J.

that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."[27] For purposes of § 3500, also known as the Jencks Act, the term "statement" includes "a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury."[28]

The United States has not responded to Pullen's request. Regardless, the Court need not engage in a prolonged inquiry into the issue. The Sixth Circuit has previously denied a defendant's request for Jencks materials when "there is no reason to think that" the attorney's failure to request the materials prejudiced the defendant.[29] As explained more fully below, Pullen requests the documents to show that his attorney was ineffective for failing to challenge the Court's subject-matter jurisdiction. As jurisdiction was proper, regardless of what the officer told the grand jury, Pullen was not prejudiced by his attorney's decision not to seek Jencks materials. The motion is therefore denied.

D. *Pullen's motion to vacate his conviction*

Pullen raises three grounds for relief. Each is addressed in turn.

1. Subject matter jurisdiction

Pullen first says that he did not receive effective assistance of counsel when his trial attorney, Carolyn Kucharski, did not challenge the Court's subject-matter jurisdiction over his case. Pullen says that he had a preliminary hearing in state court following his arrest, and that a state grand jury

---

[27] Pullen does not say which statute he relies upon, instead using the citation "18 U.S.C. §§ (a),(b)." Doc. 80, at 1. As far as the Court can tell, however, § 3500 is the most relevant statute.
[28] 18 U.S.C. § 3500(e)(3).
[29] *Evans v. United States*, 284 F. App'x 304, 312-13 (6th Cir. 2008).

returned a "no true bill" against him thereafter. He does not, however, submit any documentation of this, and the only mention of it is in an assertion in his habeas petition. Regardless, Pullen says that the ATF agent should have conducted his own independent investigation rather than relying on the evidence put in front of the state grand jury. Pullen says that the state grand jury's "no true bill" determination invalidated the use of any state evidence against him. This, Pullen says, divested this Court of subject matter jurisdiction, and his attorney failed to raise that issue to this Court.

Pullen's argument is misnamed. It does not relate to the Court's subject-matter jurisdiction to try him, but to whether probable cause to indict him existed in the first place. That is, Pullen suggests that some of the evidence presented to the federal grand jury was tainted. Pullen is correct that illegally obtained evidence may not, in most cases, be used against a defendant. It does not follow, however, that evidence used in a state grand jury proceeding cannot be used in a later federal proceeding. The "no true bill" determination is a reflection of the quality and quantity of the evidence presented; it does not speak to the *validity* of the evidence presented. Moreover, Pullen provides no argument as to why the evidence presented to the federal grand jury was improperly obtained.

But even if Pullen is making an actual subject-matter jurisdiction argument, the result is the same. Federal law provides that federal district courts "shall have original jurisdiction . . . of all offenses against the laws of the United States."[30] A jury found Pullen to have violated laws found in Title 18 of the United States Code. Thus, Pullen arguably committed an "offense[] against the laws of the United States," and this Court rightly exercised jurisdiction. Therefore, Pullen cannot show a "reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[30] *See* 18 U.S.C. § 3231.

Case No. 4:08-CR-00431
Gwin, J.

proceeding would have been different."[31]

### 2. Motion to suppress

Pullen next says that he received ineffective assistance of counsel because the trial attorney did not raise "the very known facts that [Pullen] was not trespassing" on the apartment complex.[32] In fact, Pullen's attorney made this argument in the motion to suppress  The motion says:

> At that point, police had no reasonable suspicion that Mr. Pullen was engaged in criminal activity – they merely observed him on the premises of an apartment complex as the invited guest of his girlfriend, a resident at the apartment complex. The facts known to police at that time gave them no cause to suspect criminal activity.[33]

Pullen's attorney also told the Court, during the suppression hearing, that the trespass claim was dubious:

> And just as an aside, there was a lot of testimony about this whole trespass notice, and there was no testimony whatsoever other than the one document presented by the Government.  And I believe it is Government's Exhibit 1 of a notice, which Mr. Pullen's signature does not appear on, which relates to this incident.  So there is nothing to establish that he was ever told in the past that he was not allowed to be on that property, and certainly, it has been established that he was there with a guest that day.

Thus, Pullen cannot show that his trial counsel acted deficiently.  Even if there was definitive proof that Pullen was not trespassing, that would speak only to whether there was reasonable suspicion that Pullen was engaged in criminal activity.  That question was submitted to, and answered by, the trial court.

### 3. Appellate process

Finally, Pullen says that he received the ineffective assistance of appellate counsel when his

---

[31] *Strickland,* 466 U.S. at 694.
[32] Doc. 71, at 15.
[33] Doc. 16, at 7.

-8-

Case No. 4:08-CR-00431
Gwin, J.

appellate attorney did not address "the very known fact" that Pullen was not trespassing on the apartment complex.[34]

Once again, Pullen cannot show that his attorney's conduct was deficient because his appellate attorney made the argument that Pullen had not trespassed and there was not reasonable suspicion to question him. Pullen's brief on appeal says, "[o]fficers violated Mr. Pullen's Fourth Amendment rights because the seizure was grounded in unsupported hunches and not reasonable suspicion. Therefore, the district court erred in denying Mr. Pullen's Motion to Suppress."[35] The brief goes on to say that "[t]he officers' conclusion that Mr. Pullen was committing a trespass was unfounded and based on nothing more than a hunch."[36] And again: "Officers Chance's and Quinn's seizure of Mr. Pullen was based on nothing more than a hunch – the seizure was not based on reasonable inferences that a trespass had been committed."[37]

As Pullen cannot show that his appellate counsel was deficient, he cannot demonstrate that he received the ineffective assistance of counsel.

## IV.  Conclusion

For the foregoing reasons, Pullen's motion to vacate his conviction under 28 U.S.C. § 2255 is DENIED.  Pullen's motions for the appointment of counsel and for grand jury transcripts are also DENIED.  Finally, Pullen's motion for leave to amend his complaint is DENIED AS MOOT.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and no basis exists upon which to issue a certificate of appealability.[38]

---

[34] Doc. 71, at 15.
[35] Appellant Br. at 13, *United States v. Pullen*, No. 09-3531 (6th Cir. 2011).
[36] *Id.* at 15.
[37] *Id.* at 18.
[38] 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

Case No. 4:08-CR-00431
Gwin, J.

    IT IS SO ORDERED.

Dated: July 22, 2013                          s/ *James S. Gwin*
                                                                        JAMES S. GWIN
                                                                        UNITED STATES DISTRICT JUDGE